IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| T.S.,[1] | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | §     5:24-CV-139-Z-BR |
| | § |
| COMMISSIONER, | § |
| SOCIAL SECURITY | § |
| ADMINISTRATION, | § |
| | § |
| **Defendant.** | § |

## MEMORANDUM OPINION AND ORDER
## AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff T.S. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner"), who denied Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("SSA") for lack of disability. (ECF 1). Before the Court is Plaintiff's Brief, (ECF 10), the Commissioner's Response, (ECF 13), and Plaintiff's Reply, (ECF 14). After considering the pleadings, briefs, and administrative record, the Court AFFIRMS the Commissioner's decision.

### I.    BACKGROUND

Plaintiff filed a claim for a period of disability and disability insurance benefits on May 26, 2021, alleging disability, beginning February 8, 2021, due to COVID-19 complications, pneumonia, and asthma. (ECF 9-1 at 45, 93). At the time of the filing, Plaintiff was 60 years old,

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

an individual approaching retirement age, with a high school education. (ECF 9-1 at 53). Plaintiff has an "uninterrupted 44-year work history prior to filing his claim for disability insurance benefits" with past relevant work as a retail manager. (ECF 10 at 23; ECF 9-1 at 53).

Plaintiff's application was initially denied on September 21, 2021, and subsequently denied upon reconsideration on November 17, 2022. (ECF 9-1 at 45). After filing a written request for a hearing, the Administrative Law Judge ("ALJ") held a telephone hearing on November 2, 2023. (*Id*.). The ALJ issued an unfavorable opinion on January 2, 2024, that denied Plaintiff's claim and found that Plaintiff was not "under a disability within the meaning of the Social Security Act from February 8, 2021, through the date of this decision." (ECF 9-1 at 46).

The Appeals Council denied Plaintiff's requested review on April 18, 2024. (ECF 10 at 4). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. §§ 405(g), 1383(c); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denied a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II.   STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b).

When reviewing disability determinations made by the Commissioner, the court is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). Substantial evidence is defined as "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive. The reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). "The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner." *Hernandez v. Comm'r of Soc. Sec.*, No. SA-23-CV-00633-ESC, 2024 WL 4126699, at *1 (W.D. Tex. Sept. 5, 2024).

Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). "Reversal is inappropriate if the agency's error was harmless—if it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Moreno v. Comm'r of Soc. Sec. Admin.*, 698 F. Supp. 3d 935, 939 (W.D. Tex. 2023) (cleaned up) (quoting *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Only a "conspicuous absence of credible choices" or "no contrary medical evidence" will

produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not de novo. If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### III. SEQUENTIAL EVALUATION PROCESS

At step one of the five-step sequential evaluation process[2], the ALJ found that, Plaintiff had not been engaged in substantial gainful activity since the alleged onset date. (ECF 9-1 at 47). At step two, the ALJ found that Plaintiff had the medically determinable, and severe, impairments of COVID-19 long hauler ("Long COVID"), bronchiectasis, asthma, and obstructive sleep apnea. (*Id.*). However, at step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the requisite criteria for severity under 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF 9-1 at 47-48).

Prior to step four, the ALJ must first determine Plaintiff's residual functional capacity ("RFC"). (ECF 9-1 at 46). The RFC is the most a claimant can still do despite their limitations. 20 C.F.R. § 404.1545(a)(1). The "nature and extent" of a claimant's physical, mental, and other abilities affected by impairment(s) are assessed to determine a claimant's "RFC for work activity on a

---

[2] "In evaluating a disability claim, the [ALJ] conducts a five step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Social Security Administration to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F. 3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)). Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

regular and continuing basis." 20 C.F.R. § 404.1545(b)-(d). Additionally, if a claimant has severe impairment(s) but the "symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment" within Subpart P, the total limiting effects of all claimant's impairment(s) are used to determine the claimant's RFC. 20 C.F.R. § 404.1545(e).

The RFC assessment is based on "all relevant evidence" in a claimant's record. 20 C.F.R. § 404.1545(a)(1); *see also* Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Relevant evidence encompasses a broad range of information: a claimant's relevant medical evidence, other evidence, and descriptions and observations of the claimant's limitations from claimant's impairment(s). 20 C.F.R. § 404.1545(a)(3).

How symptoms are evaluated for the purposes of 20 C.F.R. § 404.1545(a)(3) is guided, in part, by 20 C.F.R. § 404.1529. Section 404.1529 sets out the two-part test used by an ALJ when considering all symptoms. First, the ALJ considers all a claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). However, fulfilling this step does not guarantee the ALJ will determine a claimant's symptoms will completely bar the claimant's capacity for work. 20 C.F.R. § 404.1529(b).

The ALJ then evaluates the "intensity and persistence of [claimant's] symptoms, such as pain" to determine "the extent to which [claimant's] symptoms limits [their] capacity for work." 20 C.F.R. § 404.1529(c). In evaluating the intensity and persistence of the claimant's symptoms, and how the claimant is affected by their symptoms, the ALJ considers all available evidence from medical sources and non-medical sources. 20 C.F.R. § 404.1529(c)(1). The ALJ also considers objective medical evidence and other information such as the claimant's statements about the

5

intensity or persistence of their symptoms "because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). The other information considered encompasses "any symptom-related functional limitations and restrictions" from a claimant's medical and non-medical sources "which can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (ECF 9-1 at 49). However, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*.). Thus, the ALJ determined that though Plaintiff "is certainly limited by his respiratory symptoms to some degree, the record does not support that he is limited to the extent alleged." (ECF 9-1 at 51). Therefore, the ALJ found that Plaintiff had the RFC to perform light work with limitations.[3] (ECF 9-1 at 48). These limitations included: "occasional climbing of ramps or stairs; occasional exposure to dusts, fumes, and pulmonary irritants; no climbing ladders, ropes or scaffolds." (*Id*. at 48).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (ECF 9-1 at 52-53). At step five, the ALJ determined that Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (*Id*.). Specifically, the ALJ referenced occupations that would require

---

[3] 20 CFR 404.1567(b) (defining Light Work: "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

6

"very little, if any, vocational adjustments in terms of tools, work processes, work settings, or industry," such as a retail manager, cashier/checker, or cashier supervisor. (*Id*. at 54).

### III. DISCUSSION

Plaintiff challenges the hearing decision on the grounds that the ALJ erred in determining Plaintiff's RFC. Plaintiff asserts the ALJ failed to account for Plaintiff's total limiting effects as the ALJ (1) did not "properly evaluate the medical opinion evidence" of treating provider Dr. Nilesh Patel, and (2) did not properly evaluate Plaintiff's self-described limitations. (ECF 10 at 4). For reasons explained below, the Court finds that the ALJ properly interpreted the medical evidence and Plaintiff's statements in order to determine Plaintiff's capacity for work. Further, the ALJ supported this decision with substantial evidence.

**A. The ALJ carefully considered the medical opinion evidence and other evidence in the record.**

When considering medical opinion evidence, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. The ALJ is not barred from weighing medical opinions or prior administrative medical findings, but, rather than weighing any opinions or findings from the outset, the ALJ evaluates each opinion according to the factors listed in 20 C.F.R. § 404.1520c. *see* 20 C.F.R. § 404.1520c(c)(1)-(3) (noting that the factors are supportability, consistency, and relationship with claimant — which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(c)(1). Additionally, the "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Donohue v. Comm'r*

7

*of Soc. Sec.*, No. 4:20-CV-1111-BJ, 2021 WL 5854272, at *6 (N.D. Tex. Dec. 9, 2021) (cleaned up) (quoting *Moore v. Saul*, No. 3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021)).

Pertinent to this matter is the notion that "[t]o establish that a claimant's injuries meet or medically equal a listing, medical findings must support all of the criteria for a listed impairment (or most similarly listed impairment) (citation omitted) An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify." *Thomas v. Colvin*, No. CV 15-0026, 2016 WL 1020749, at *9 (W.D. La. Feb. 2, 2016), *report and recommendation adopted*, No. CV 15-0026, 2016 WL 1057455 (W.D. La. Mar. 14, 2016), *aff'd*, 669 F. App'x 250 (5th Cir. 2016). In *Thomas*, the ALJ found that though the claimant's various pulmonary function tests ("PFT") supported findings of moderate obstruction, mild obstructive ventilatory impairment, moderate obstructive ventilatory impairment, and moderate obstructive lung disease, the claimant's "asthma did not meet or equal Listing 3.03 [of 20 C.F.R. § Pt. 404, Subpt. P, App. 1] because he did not have results on pulmonary functioning testing or attacks requiring physician intervention at the requisite frequency." *Thomas*, at *9-12. The results of PFTs are compared against the criteria established by the SSA regulations: "When pulmonary tests fail to disclose a substantial pulmonary impairment, plaintiff cannot be disabled." *Fletcher v. Califano*, 471 F. Supp. 317, 320 (N.D. Tex. 1979).

Regarding Plaintiff's respiratory disorders, SSA regulations "evaluate respiratory disorders that result in obstruction (difficulty moving air out of the lungs) or restriction (difficulty moving air into the lungs, or that interfere with diffusion (gas exchange) across cell membranes in the lungs." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 3.00(A)(1). Asthma and bronchiectasis are specifically listed as examples of respiratory disorders. *Id*. Sleep-related breathing disorders, such

as sleep-apnea, are evaluated by reviewing the complications that result from the sleep-related breathing disorder. *Id*. at § 3.00(P)(2). Long COVID is evaluated as an "unlisted impairment or as part of a combination of impairments." SSA, Emergency Message, EM-21032 REV 2, effective Mar. 28, 2024. ("COVID-19 and Long COVID may affect respiratory, cardiovascular, renal, neurological, or other body systems."). Further, "[i]f a person has an underlying chronic respiratory disorder, a finding of medical equivalence may be possible if all other requirements of the listing are satisfied." *Id*. Long COVID patients can present with symptoms such as, but not limited to, shortness of breath, cough, persistent fatigue, post-exertional malaise, memory changes, and lightheadedness. CENTER FOR DISEASE CONTROL, https://www.cdc.gov/covid/long-term-effects/long-covid-signs-symptoms.html (last visited Jan. 15, 2025).

In reviewing the medical evidence, the ALJ considered all Plaintiff's symptoms, medical opinions, and prior administrative findings surrounding Plaintiff's Long COVID infection, sleep apnea, and chronic respiratory disorders—bronchiectasis and asthma. (ECF 9-1 at 47-48). The closest medically determinable impairment equivalent regarding the majority of Plaintiff's Long COVID symptoms—persistent coughing, phlegm, dizziness, and shortness of breath upon slight exertion—are found within the respiratory body system.[4]

The ALJ appears to have considered these Long COVID symptoms in conjunction with Plaintiff's chronic respiratory disorders, as these symptoms are "closely analogous" to the chronic respiratory disorders. 20 C.F.R. §416.926(b)(ii)(2) ("If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter,

---

[4] Plaintiff also has Long COVID symptoms that present as neuropathy. (ECF 9-1 at 78). Plaintiff is more prone to stumble, has limitations in fine motor skills, such as picking things up with his hands, and has tingling and numbness in the hands and feet. (*Id*.). Additionally, Plaintiff has experienced consistent Long COVID brain fog. (ECF 9-1 at 80).

we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significant to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing."). Consequently, regarding both the majority of Plaintiff's Long COVID symptoms and Plaintiff's chronic respiratory disorders, the ALJ determined that Plaintiff's "chronic respiratory disorders do not meet the criteria under listing 3.02…Additionally, the severity of the claimant's asthma condition does not meet the criteria Listing 3.03 because there is no evidence of exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart." (ECF 9-1 at 48).

In reaching this conclusion, the ALJ analyzed a broad range of medical findings, opinions, and other evidence. (ECF 9-1 at 48-52). In analyzing Plaintiff's Long COVID symptoms, the ALJ consistently referenced how various tests and doctor's visits impacted Plaintiff's symptoms, such as shortness of breath. (ECF 9-1 at 48) ("He stated he had to go to the doctor's office every four weeks to get a steroid shot to reduce the inflammation in his lungs so he could breathe."); (*Id.*) (The claimant testified he is only able to stand for about 2-3 minutes before he needs to lean on something…he gets dizzy and his legs turn into jelly."). Further, the ALJ consistently noted Plaintiff's coughing.[5] (ECF 9-1 at 48) ("The claimant testified that his COVID-19 long haulers, acute asthma, and persistent cough with phlegm prevented him from returning to work."); (*Id.*) ("[A]ny exertion makes him cough and lose his breath."). In analyzing Plaintiff's respiratory disorders, the ALJ relied on PFT results and applied the standards established by Social Security Administration regulations. (ECF 9-1 at 50); *see Thomas*, 2016 WL 1020749, at *9.

---

[5] The ALJ also referenced a physical consultative visit that addresses Plaintiff's symptoms of neuropathy. *Id.* at 50.

Although Plaintiff has experienced persistent symptoms of chronic respiratory disorders, as well as Long COVID symptoms, such as shortness of breath and bouts of coughing, the ALJ determined that Plaintiff's symptoms do not rise to the requisite levels of the established criteria for respiratory disorders. (ECF 9-1 at 48). The ALJ considered the medical evidence, other evidence in the record, and the applicable criteria for listed impairments in determining the RFC. There is substantial evidence to support his decision.

**B. The ALJ's analysis of Dr. Patel's medical opinion**

Plaintiff argues that:

"the issue in this case arises from the ALJ's finding that Dr. Patel's opinion was unpersuasive, and whether *that finding* is reasonable and accurately and logically bridged to the record. Showing that the ALJ erred in finding that Dr. Patel's opinion was not *at least as persuasive as the others creates the error* for which remand is needed for further proceedings." (ECF 10 at 15) (emphasis in original).

Plaintiff asserts that the "ALJ did not reasonably reject the opinion of Dr. Patel," and that the ALJ's rationale regarding Dr. Patel's opinion reflects a failure to "investigate the facts and develop the arguments both for and against granting benefits." (ECF 10 at 15-18) (cleaned up) (quoting *Sims v. Apfel*, 530 U.S. 103, 110 (2000)).

The Commissioner distinguishes between the ALJ 'rejecting' Dr. Patel's opinion, as Plaintiff characterizes the matter, and merely finding Dr. Patel's opinion "'unpersuasive' because it was 'not supported by his own examination findings.'" (ECF 13 at 11). The Commissioner asserts that the ALJ supported the finding of "unpersuasive" by pointing to Dr. Patel's (1) notes from primary care visits —as opposed to visits with a  specialist in a related field, and (2) findings that were inconsistent with recent PFT or pulmonary stress testing results. (*Id*. at 11-12). Further, the

11

Commissioner notes that the "ALJ considered Dr. Patel's many mild, stable, negative, and normal findings on exam and determined they were inconsistent with the doctor's dire MSS [medical inquiry form] findings." (*Id*. at 13). Although Plaintiff believes the ALJ should have found Dr. Patel's opinion more persuasive, this Court does not reweigh evidence. *Hammond v. Barnhart*, 124 F. App'x 847, 850 (5th Cir. 2005) ("We may not reweigh the record evidence, try the issues *de novo,* or substitute our judgment for that of the Commissioner."). Further, as the Commissioner notes, "an ALJ is not required to adopt a specific physician's assessment but is instead responsible for interpreting the medical evidence to determine a claimant's capacity for work." (ECF 13 at 15). This Court agrees. The ALJ considered the opinion of Dr. Patel, pursuant to 20 C.F.R. § 404.1520c for analyzing medical opinions. The ALJ, when considering the factors of supportability and consistency, found that Dr. Patel's opinion was not persuasive because the opinion was "not supported by [Dr.Patel's] own exam findings or consistent with the recent PFT findings or pulmonary stress testing in the record." (ECF 9-1 at 52). The ALJ applied a broad range of medical evidence to determine Plaintiff's RFC and reasonably found that Dr. Patel's assessment was not persuasive; therefore, there is no basis for remand on this point.

**C. The ALJ carefully considered Plaintiff's self-described limitations with findings supported by substantial evidence.**

Though a court's review of an ALJ's decision is determined by "whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence," a court may apply the harmless error doctrine when considering whether substantial evidence supports the ALJ's decision. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012); *Donohue v. Comm'r of Soc. Sec.*, No. 4:20-CV-1111-BJ, 2021 WL 5854272, at *5 (N.D. Tex. Dec. 9, 2021) ("[T]he harmless error doctrine applies to social security cases.").

Because "a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision," claimants sometimes assert that an ALJ's failure to specifically mention a piece of evidence is grounds for a finding of no substantial evidence. *Donohue v. Comm'r of Soc. Sec.*, No. 4:20-CV-1111-BJ, 2021 WL 5854272, at *4 (N.D. Tex. Dec. 9, 2021). Thus, courts have determined that "[p]rocedural perfection in administrative proceedings is not required, and a court will not vacate a judgment unless the substantial rights of a party have been affected." *Id*. (cleaned up) (quoting *Mays v. Bowen*, 837 F.2d 1362, 2364 (5th Cir. 1988) (per curiam)); *Hammond v. Barnhart*, 124 F. App'x 847, 851–52 (5th Cir. 2005) ("The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it.").

Plaintiff alleges the ALJ's summary of his self-described limitations is deficient as it "in no way established that he, [Plaintiff], performs any activities inconsistent with [the] self-described limitations." (ECF 10 at 19). Regarding the ALJ's analysis of Plaintiff's daily activities, Plaintiff asserts that "the ALJ never found that any of his daily activities were inconsistent with his allegations." (*Id.* at 19). Plaintiff further alleges that "no logical bridge exists between the evidence and the ALJ's finding that Plaintiff's statements were inconsistent with the record." (*Id.* at 24).

The ALJ compared Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms to the medical evidence and other evidence in the record, finding that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence on the record." (ECF 9-1 at 49). The ALJ concluded that "[w]hile the claimant is certainly limited by his [Plaintiff's] respiratory symptoms to some degree, the record does not support that he is limited to the extent alleged." (*Id*. 51). Along with the results of numerous PFT, the ALJ also found that the following evidence indicated that Plaintiff's statements were not entirely consistent with the medical evidence and other evidence in the record: whether Plaintiff (1) required supplemental

13

oxygen; (2) performed well on two six-minute walk tests; (3) did not have routine hospitalizations due to asthma; (4) was alert and in no acute distress with normal cardiovascular and respiratory functioning at the time of a May 7, 2022, physical examination; and (5) did not desaturate on two separate 6-minute walk test. (*Id*.at 49-51).

The ALJ's determination of Plaintiff's RFC relied upon the medical evidence and other evidence on the record. (*Id*. at 49). The Commissioner correctly notes that the "ALJ is not required to discuss all [20 C.F.R. § 404.1529(c)(3)] factors in each case." (ECF 13 at 17). Although the ALJ summarized Plaintiff's self-described limitations and did not specifically mention all the factors Plaintiff described, that does not support a finding of no substantial evidence. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."). Additionally, the ALJ sufficiently connected Plaintiff's self-described limitations to the medical evidence and other evidence on the record.

## V. CONCLUSION

The ALJ's decision included "a narrative discussion describing how the evidence supports each conclusion." SSR 96-8P (S.S.A. July 2, 1996). Further, the ALJ applied specific medical facts, non-medical evidence, and Plaintiff's reported daily activities. *Id*. The ALJ considered Plaintiff's symptoms and found that Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were inconsistent with the objective medical evidence. (ECF 9-1 at 48). Therefore, the ALJ's RFC determination was consistent with the SSR requirements and was supported by substantial evidence.

For the reasons stated above, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**
**ENTERED January 16, 2025.**

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

14